**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-66-DLB**

**JOSE RAFAEL CAMARGO NAVAS,**                                       **PETITIONER**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**ATTORNEY GENERAL OF THE UNITED STATES, et al.,**        **RESPONDENTS**

**\* \* \* \* \* \* \* \* \* \***

## I.     INTRODUCTION

This matter is before the Court on *pro se* Petitioner Jose Rafael Camargo Navas's

Petition for Writ of Habeas Corpus (Doc. # 1). Respondents[1] having filed their Response

(Doc. # 6), and Petitioner having failed to file a timely reply, this matter is now ripe for

review. For the following reasons, the Court will **deny** the Petition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Jose Rafael Camargo Navas is a native and citizen of Venezuela. (Doc. # 6-1 at

1). He entered the United States without inspection on or about May 8, 2023. (*Id.*).

Months later, on December 27, 2023, the Department of Homeland Security ("DHS")

served Navas with a Notice to Appear before an Immigration Judge ("IJ") for removal

proceedings. (Doc. # 6-2). On November 9, 2024, Navas obtained Temporary Protected

Status ("TPS"). (Doc. # 1 at 3). Although his TPS was set to expire on April 2, 2025,

Navas contends that he timely filed for re-registration on September 2, 2025 thereby

---

[1]    Petitioner files this action against the Director of the Chicago Field Office, Immigration and Customs Enforcement ("ICE"), the Attorney General of the United States, and Marc Fields, Jailer, Kenton County Detention Center. (*Id.*). Respondent Fields did not file a Response and the time to do so has passed.

1

extending the period of his TPS while his application was under review.  (*Id.*).  Navas was arrested on January 26, 2026 upon arriving at a scheduled meeting with immigration authorities.  (Doc. # 6-1 at 2).  He is presently detained at the Kenton County Detention Center in Covington, Kentucky pending removal proceedings.  (Doc. # 1 at 1).

Proceeding *pro se*, Navas filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on February 13, 2026.  (*Id.*).  In his Petition, Navas argues that he was unlawfully arrested and detained in violation of his TPS.  (*Id.* at 3-4).  On February 17, 2026, the Court directed Respondents to respond to the Petition.  (Doc. # 5).  Respondents having filed their Response (Doc. # 6), and Navas having failed to file a timely reply, this matter is ripe for the Court's review.

## III.    ANALYSIS

Navas seeks habeas relief solely on the ground that he has active TPS, which deprives ICE of the authority to detain him pending removal proceedings.  (Doc. # 1 at 3).  Although Respondents devote a substantial portion of their briefing to the discretionary and mandatory detention regimes established by 8 U.S.C. §§ 1225(b)(2) and 1226, respectively, Navas does not raise that issue in his Petition.  (Doc. # 6 at 1).  Navas does not allege that he is entitled to a bond hearing he did not receive but, rather, asserts that his detention is unlawful because of his TPS.  So, the sole issue before the Court is whether Navas has TPS that renders his present detention unlawful.

Section 244 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1254a, authorizes the Attorney General to "designate any foreign state for TPS, permitting qualifying foreign nationals of the designated state to apply for protection from removal and work authorization."  *National TPS Alliance v. Noem*, 166 F.4th 739, 754 (9th Cir.

2026) (footnote omitted).  This authority has been transferred from the Attorney General to the Secretary of DHS.  *Id.* at 754 n. 7.  The Secretary of DHS may bestow TPS designation for a number of reasons, including a finding of "extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety[.]"  8 U.S.C. § 1254a(b)(1)(C).  On October 3, 2023, Venezuela received TPS designation based on such extraordinary conditions.  (Doc. # 6-3 at 1).  On February 5, 2025, DHS Secretary Kristi Noem announced that Venezuela's 2023 TPS designation would be terminated effective April 7, 2025.  (*Id.* at 2).

Navas claims that after entering the United States he applied for TPS, and his application was granted.  (*Id.* at 3).  His TPS was approved for the period between November 9, 2024 and April 2, 2025.  (*Id.* at 3).  And Navas alleges that he timely sought re-registration of his TPS.  (*Id.*).  He argues that, at all relevant times, his TPS was active and, as a result, ICE could not treat him "as removable or detainable."  (*Id.*).  However, as Respondents note, "[o]n February 5, 2025, DHS published a notice announcing the Secretary of Homeland Security's decision to terminate Venezuela's 2023 TPS designation." (Doc. # 6 at 2).  Thus, Respondents argue, at the time of his arrest, Navas did not have TPS and his present detention is lawful.  (*Id.*).

However, Navas alludes to the fact that "[t]he termination and scope of TPS for Venezuela is currently being litigated in federal court."  (Doc. # 1 at 3).  Although Navas does not identify any specific litigation, DHS's termination of Venezuela's 2023 TPS designation has been deemed unlawful by a court in the Northern District of California. *National TPS Alliance v. Noem*, 798 F. Supp. 3d 1108, 1116 (N.D. Cal. 2025).  On September 5, 2025, that court held that Secretary Noem's "actions in . . . terminating TPS

3

[for Venezuela] exceeded the Secretary's statutory authority and [were] arbitrary and capricious, and thus must be set aside under the Administrative Procedure Act[.]" *Id.* The Government appealed this decision to the Ninth Circuit Court of Appeals and sought a stay of enforcement pending resolution of that appeal. *National TPS Alliance v. Noem*, 163 F.4th 1152, 1157 (9th Cir. 2025). When the Ninth Circuit denied the Government's request for a stay, the Government appealed to the Supreme Court. *Noem v. National TPS Alliance*, 146 S.Ct. 23, 24 (2025). On October 3, 2025, the Supreme Court stayed the district court's order invalidating the termination of Venezuela's TPS, allowing DHS to move forward with its terminations. *Id.* Further, the Supreme Court provided that its stay would remain in effect "pending the disposition of the Government's appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of certiorari, if such writ is timely sought." *Id.* Subsequently, on January 28, 2026, the Ninth Circuit affirmed the district court's September 5, 2025 Order. *National TPS Alliance v. Noem*, 166 F.4th 739, 768-69 (9th Cir. 2026). At present, the Government has not filed a petition for a writ of certiorari but the time for doing so has not elapsed. *See* Supreme Court Rule 13(1) ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment . . . entered by a state court of last resort or a United States court of appeals . . . is timely filed with the Clerk of this Court within 90 days after entry of the judgment."). As a result, the Supreme Court's October 3, 2025 stay and, by extension, DHS's termination of Venezuela's TPS remain in effect. *See Marrufo-Castellano v. Raycraft*, No. 1:26-cv-417, 2026 WL 679106, at *2 n. 4 (W.D. Mich. Mar. 11, 2026) (holding that Venezuelan Petitioner's TPS was terminated and that the Supreme Court allowed this termination to proceed pending final disposition of the Ninth Circuit litigation);

*Colina-Rojas v. Noem*, No. 4:26-cv-37-RGJ, 2026 WL 412138, at *1 n. 2 (W.D. Ky. Feb. 13, 2026) (same).

Here, Navas was detained by ICE on January 26, 2026. (Doc. # 1 at 2). He claims that this detention is unlawful and "in direct violation of INA § 244." (*Id.*). However, as discussed above, Venezuela's TPS designation was terminated as of April 7, 2025—roughly ten months prior to Navas's arrest. (*See* Doc. # 6-3 at 3). And although the propriety of DHS's actions in terminating Venezuela's TPS is currently the subject of judicial review, the Supreme Court has allowed the termination to proceed pending a final resolution of this litigation. *National TPS Alliance*, 146 S.Ct. at 24. Thus, at the time of his arrest, Navas lacked TPS. Other courts, in this Circuit and others, have held that "[u]nder these circumstances, [Navas] has failed to show that he currently has TPS or that he had TPS when he was taken into ICE custody." *Lopez v. Raycraft*, No. 2:26-cv-29, 2026 WL 607668, at *2 (W.D. Mich. Mar. 4, 2026); *see also Davila v. Warden, North Lake Processing Ctr.*, No. 1:26-cv-579, 2026 WL 710104, at *2 n. 3 (W.D. Mich. Mar. 13, 2026) (finding that Venezuelan petitioner lacked TPS and that the Supreme Court "allowed the termination of TPS for Venezuela to take effect" pending resolution of the *National TPS Alliance* litigation); *Diaz Patino v. Villegas*, No. 1:25-cv-276-H, 2026 WL 673166, at *1 n. 1 (N.D. Tx. Mar. 9, 2026) ("But because the Supreme Court's stay remains in place until the 'disposition of a petition for a writ of certiorari, if such writ is timely sought,' the stay remains in place.") (quoting *National TPS Alliance*, 146 S.Ct. at 24). Because Navas's claims are predicated on the validity of his TPS, and because his TPS was terminated in April of 2025, his Petition cannot succeed. (*See* Doc. # 1 at 5

5

("ICE is detaining a TPS registrant in direct violation of federal law while TPS Venezuela is under active litigation and while USCIS is processing his renewal.")).

## IV.     CONCLUSION

Because Navas has failed to demonstrate that he had active TPS at the time he was arrested or at any point during his detention, and for the reasons set forth herein, **IT IS ORDERED** that Petitioner Jose Rafael Camargo Navas's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED.**

This 23rd day of March, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-66 MOO denying habeas.docx

6